MARÍA ANGELA EMANUELLI, Plaintiff and Appellant, *v.* SEGUNDO CADIERNO ET AL., Defendants and Appellees.

No. 6786. Argued February 4, 1936.—Decided June 3, 1936.

*J. J. Ortiz Alibrán* for appellant. *Monserrat & Monserrat* and *J. M. Calderón, Jr.* for appellees.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the Court.

This is an action for resolution of a contract and damages brought by María Angela Emanuelli against Segundo Cadierno and his wife, and decided by the district court against the plaintiff, without costs.

On February 1, 1927, the defendants sold by public deed to Emilio H. Amy and his wife, the plaintiff, two lots located in Hato Rey, Río Piedras, one, no. 1, of 606 square meters, facing the central highway, and another, no. 2, adjacent to no. 1, of 560 square meters. The contract price was $4,664, $2,240 for lot no. 1 and $2,424 for lot no. 2. $2,664 were paid in cash, leaving a balance of $2,000 which was paid on June 9, 1928.

The deed of sale recited that:

"6. Segundo Cadierno Rodríguez, for himself and on behalf and representation of his principal Carlota Géigel de Cadierno, warrants title in the most solemn manner.—7. The purchasers, the spouses Emilio H. Amy and Angeles Emanuelli de Amy accept this deed as

it has been drafted, stating also that it is in accordance with their instructions and the execution of this deed shall be sufficient as a formal delivery of possession.''

The Amy-Emanuelli matrimony was dissolved by a decree of divorce, and by a deed of liquidation of community property executed on March 15, 1930, the lots were awarded to the wife, the plaintiff. The purchase had been made at her suggestion, for the purpose of building a residence. After the divorce, as the plaintiff did not have means sufficient to build, she decided to sell the parcels and had a sign placed on the premises offering them for sale. The advertisement was removed and when it was replaced it was again removed, ''two Americans, husband and wife'' alleging that they were the owners of the lot. ''From that time'', says the plaintiff, testifying at the trial, I began to take steps to have Mr. Cadierno do something about it since I had been prevented from taking possession of the lot. . . . Upon finding that that lot did not belong to Mr. Cadierno or to me, I told him to return my money and my interest because I no longer intended to build. . . . . Mr. Cadierno began to tell me to have patience that he was going to get the money; that he was going to return my money to me, and he has kept putting me off this way.''

The testimony of the plaintiff is corroborated by that of her brother Miguel A. Emmanuelli, by that of her attorney, and by documentary evidence showing that the lot facing the highway, that is, no. 1, had been sold by public deed on April 28, 1913, by José D. Riera to María Ruff and by the latter to Walter D. Beecher and his wife Eva Lytle Beecher on May 4, 1915, by public deed executed on that date. Those sales appear recorded in the Registry of Property in the years 1913 and 1915. On the margin of the 1915 entry there is a note dated September 12, 1916, which says:

''The sale referred to on the opposite page in favor of Walter D. Beecher and his wife Eva Lytle Beecher is consummated, as requested, because the term fixed by the said inscription has expired

without the vendor María Ruff having made use of the right to repurchase which she reserved, this consummation having been requested.''

That is the truth of the matter, admitted by the defendant himself, as is shown by the testimony of the attorney for the plaintiff as follows:

''On July 26, 1932, Mrs. Emmanuelli asked me to represent her in this matter which she had pending with Mr. Cadierno. Following my usual custom of making friendly efforts to see if it is possible for the parties to reach an agreement before filing a complaint, especially where friends, like Mr. Cadierno, are involved, I summoned Mr. Cadierno to an interview. I finally went to see him at his office and we spoke of the matter and I verbally made the claim which Mrs. Emmanuelli had or has against him, telling him that I had studied the Reg'stry of Property and that the said Registry showed . . . Mr. Cadierno admitted not once, but every time that I interviewed him, three or four times, first, that that lot was not his, that it had been sold to him after it had already been sold to Mrs. Ruff, who later sold it to Mr. Beecher. Mr. Cadierno alleged that he was not respons'ble since a thing which did not belong to the vendor was sold to him and he had sold it in the same way to my client—Mrs. Emmanuelli. Mr. Cadierno ended by telling me that he was willing to make an arrangement and agreement on the basis of returning the money to this lady but that he was extremely pressed for funds because his money was tied up in the Banco Popular; that he had had to contribute a large sum in order for this bank to reopen but that as soon as the bank opened and he was in a position to do so, he would make me a proposition for a final settlement of this question, and requested me not to file a complaint; to wait for him, as I did, until February. I spent the months of November, December and January in the United States. Upon my return in the month of February I again saw Mr. Cadierno. He again made me the same offer and the same request, and, as I had to return to the United States early in March, I went to see him again before sailing. The ship sailed on Thursday and Mr. Cadierno offered to settle the matter on Wednesday at the latest. Thursday morning arrived without any sort of concrete or definite settlement or offer having been made, and then I turned over my notes to my colleague Ortiz Alibrán, and conferred with him, leaving him in charge of filing the complaint. After this complaint was filed, I again went to see Mr. Cadierno; I

aga'n urged him to settle the matter before it should be necessary to go to trial. Mr. Cadierno asked me in the next to last and the last terms of this Court—the terms prior to this one since the complaint was answered—not to set the case for trial, that we would settle the matter very shortly and for his reason the trial of this case was delayed. Being convinced that it was impossible to settle the matter in a friendly manner, we set the case for trial.''

The defendant moved to strike the testimony of the attorney for the plaintiff and the court decided:

''All of the testimony of the witness regarding the offers of compromise made by Mr. Cadierno is eliminated. The rest remains.''

The plaintiff excepted and the witness continued:

''If the Court will permit me. I have only wished to make clear that Mr. Cadierno admitted on repeated occasions that the lot that he sold, lot no. 1 of block K, as it is described in the deed, and which he sold to Mrs. Emmanuelli was not his; that another person who had no right to sell it had sold it to him . . . Mr. Cadierno, at the time he talked to me, admitted that the lot which he sold was not his, but not that he knew this at the time he sold it; and that he had passed it on just as it had been passed on to him.''

The defendant Cadierno testified that since March 19, 1923, when he acquired the parcel from which he segregated and sold the lots in question his possession had not been disturbed. The claims of the plaintiff were made toward the middle or end of 1932. In the only interview which he had with the plaintiff the latter begged him to buy the lots because she needed money. He does not remember when this was ''but perhaps it was around '29''. He says that ''he was in possession of the lot by a public document'' and he paid its taxes while it was his.

When called to testify by the plaintiff, and to the question: ''Did you not buy, Mr. Cadierno, lot no. 1, letter K, to which this suit refers, by deed no. 13 of April 20, 1933, from Mrs. Beecher?'' he answered: ''I bought a lot in a parcel of land in the Buena Vista plantation, in the office of

notary Francisco Ramírez de Arellano. I cannot remember at this moment the number of the lot, or its dimensions, or anything like that."

The objection was made that it was sought to prove something which happened subsequently to the complaint and the judge sustained the objection thus: "This is a fact subsequent to the complaint, and cannot be the object of evidence."

The plaintiff excepted and continued the examination with the following result:

"A.—Who owns that lot today?—Lot no. 1, letter K, involved in this suit, that is, the lot which you sold to Mrs. Emmanuelli? Are you in possession of it or is she?—W. I don't know whether or not she has sold it.—A. But you are not in possession of it?—W. I don't know whether or not she has sold it.—A. I am not asking you that. My question is very clear and you must answer me categorically. Are you or are you not in possession of that lot?—W. I really do not know; I believe not.—A. You do not know, then whether or not you are in possession of it?—W. No, sir, I am not sure.—A. You are not sure?—W. No, sir, I am not.—A. So that it might be true that yout are in possession of that lot?—W. It might and it might not be true.—A. Then could it be that you are in possession of a thing without knowing it?—W. Yes, sir, because one has so many things . . . Plaintiff.—Nothing more, Your Honor."

In his statement of the case and opinion the district judge says, in part, the following:

"It also appears from the evidence, (certificate of the Registrar of Property of October 20, 1933, Ex. E. of the plaintiff), that one of the lots described in the complaint appeared previously recorded in the name of Eva Beecher, with an area somewhat different from that given to lot A, although the boundaries coincide.

"* * * * * * *

"The theory of the plaintiff is that since the thing sold was not delivered, the contract may be rescinded, inasmuch as, since a conract of sale is a bilateral or reciprocal obligation which imposes on the vendor the obligation of delivering the parcel sold, and on the purchaser the obligation of paying the agreed price, there is no contract, or at least, the contract should be rescinded because of the

failure of the defendants to comply with their obligation to deliver the parcel.

" * * * * * * *

"The prayers of the complaint are the following :—That we decree the resolution of the contract of sale, and therefore order the return to the plaintiff of the purchase price of the lots, plus the corresponding interest, damages, and the costs of the proceeding. As is clearly seen the action brought in this case is resolutory . . . The evidence clearly shows, both by the terms of the deed of sale and by the personal admission of the plaintiff in the deed of dissolution of the community property, that she was in possession of the lots. As the plaintiff so well says, this is a case of double sale, and in accordance with the law the property belongs in cases of this nature to the one who first recorded in the registry; but this does not mean that the second purchaser is without protection, for the same law provides the way or remedy for obtaining the relief to which he may be entitled, inasmuch as the vendor is liable in his warranty of the real property sold, in case of eviction.

" * * * * * * *

"Turning now to the principal question raised by the plaintiff, that is, that the resolution of the contract be decreed, we must hold that, in our opinion, the contract in this case has been consummated and perfected and therefore the resolutory action does not lie. The law says that contracts validly executed may be rescinded, and points out the cases in which rescission is authorized; but the law also establishes in a definite manner that the rescissory action is subsidiary and that it can be brought only when the injured party has not other legal remedy to recover the damages. The case involved in the present litigation is not expressly specified among those wherein the law authorizes rescission. We have found only one case which bears any analogy to the instant case, and that is *López* v. *Lizardi*, reported in 27 P.R.R. 691. This case establishes the doctrine that the execution of a deed of purchase and sale creates a presumption *juris tantum* of the delivery of the thing sold; that generally the presumption is equivalent to the fact, and that if in fact the contrary should appear, the symbolic delivery recognized by the second paragraph of Section 1365 of the Civil Code would not finally decide the question. An analogous doctrine is established by the Supreme Court in the case of *Ferry* v. *Alomar*, et al. 15 P.R.R. 732. We have no evidence that the plaintiff has been disturbed in the possession of the parcel purchased, except for the statement made to the effect that someone

removed the sign or advertisement of sale of the parcel which was placed on the same. Who may have done this is not shown by the evidence; nor is it shown that, aside from this circumstance, there has been any ostensible act of disturbance of possession, or that there is a well-grounded fear that it may be disturbed by a judicial action. So that, since the contract of sale entered into by the parties is perfectly consummated, the provisions, of Section 1242 et seq. of the Civil Code are not applicable, although we make the reservation that, according to the same Code, other relations between the parties may arise, such as those derived from the obligation of the vendor in case of eviction from the property sold, should this occur.

"As to the second question raised by the defendant . . . to wit: that the action has prescribed according to the provisions of Section 1251 of the Civil Code of Puerto Rico, since the action brought in this case is a rescissory action, Section 1251 of the Civil Code provides that an action for rescission must be brought within four years. According to the evidence presented, the contract of sale was executed in February, 1927, and the original complaint in this action was filed on March 31, 1933, that is, long after the expiration of the four years fixed by law. A simple arithmetical calculation leads us to the conclusion that the statutory term has more than elapsed. There are no allegations, nor is there any evidence, to show that prescription has been interrupted; on the contrary, it appears that the steps taken by the defendant Cadierno were taken after the complaint was filed, according to the evidence of the plaintiff herself. We are fully convinced that if there exists, as there does exist, a double entry in the registry, the plaintiff may at the proper time resort to the remedy provided by law for the defense of her interests; but neither the allegations nor the evidence would justify a judgment for the plaintiff rescinding or resolving a contract which was perfected more than six years ago."

Feeling aggrieved, the plaintiff appealed to this Court. In her brief, she assigns three errors which, in her opinion, were committed by the trial court, in holding that because she took possession of the lot sold to her, she is prevented from bringing her action, in confusing the resolutory action brought with the rescissory action, and in holding that the action had prescribed.

A rescissory action, according to Escriche, is one which has for its object the invalidation of some obligation,

contract, will, and other acts which constitute the same, because of fraud, physical or moral violence or damage to a minor, and a resolutory action is one which has for its object the invalidation of the obligation contracted, and the restoration of the status quo existing prior to the contract. 1 Escriche, *Diccionario de Legislación y Jurisprudencia,* 194.

The action brought in this case is not a rescissory but a resolutory action, just as the plaintiff entitled it from the beginning. It arises from the provisions of Sections 1334, 1350, 1389, 1395, and 1077 of the Civil Code, 1930 ed., which provide:

"Section 1334.—By a contract of purchase and sale one of the contracting parties binds himself to deliver specified thing and the other to pay a certain price therefor in money or in something representing the same.

"Section 1350.—A vendor is bound to deliver and warrant the thing which is the object of the sale.

"Section 1389.—The vendee is obliged to pay the price of the thing sold at the time and place stipulated in the contract.

"If the time and place should not have been fixed, the payment must be made at the time and place where the thing sold is delivered.

"Section 1395.—The sale shall be rescinded for the same causes as all other obligations, and furthermore for those mentioned in the preceding chapters and by conventional or legal redemption.

"Section 1077.—The right to rescind the obligations is considered as implied in mutual ones, in case one of the obligated persons does not comply with what is incumbent upon him.

"The person prejudiced may choose between exacting the fulfilment of the obligation or its rescission, with indemnity for damages and payment of interest in either case. He may also demand the rescission, even after having requested its fulfilment, should the latter appear impossible.

"The court shall order the rescission demanded, unless there are sufficient causes authorizing it to fix a period.

"This is understood without prejudice to the rights of third acquirers, in accordance with Sections 1247 and 1250, and with the provisions of the Mortgage Law."

 Did the vendor in this case fulfill the obligation of delivering the thing sold to the purchaser? We have seen

that the trial court answers the question in the affirmative. It bases itself on Section 1351 of the Civil Code, 1930 ed., which provides:

"Section 1351.—A thing sold shall be considered as delivered, when it is placed in the hands and possession of the vendee.

"When the sale should be made by means of a public instrument, the execution thereof shall be equivalent to the delivery of the thing which is the object of the contract, if in said instrument the contrary does not appear or may be clearly inferred."

Here the sale was made by public deed and the following is stated in the deed: "The execution of this deed being a sufficient token of a formal taking of possession."

For all legal purposes in a normal case, that is sufficient. By virtue of the symbolic delivery of possession, the purchaser becomes the owner, if he in turn fulfills, of course, his own obligations.

In the case of *Ferry* v. *Alomar,* et al 15 P.R.R. 732, this court, by Mr. Justice Figueras, said:

". . . . the symbolical delivery which is represented by the execution of the deed of sale, which has a precedent in Law, eight, title 30, *partida* three, is excepted only when it appears therefrom or it may be clearly inferred that it was not the intention of the vendor who is the person obliged to comply with this requirement of the law, to deliver the thing sold.

"Section 1365, 1366 and 1367 of the Revised Civil Code, enumerate the different ways in which a thing may be delivered. It may be inferred from all of them that what gives legal life to the act of the delivery is essentially the determination of the will of the parties to deliver and receive respectively. When the thing is placed in the power and possession of the purchaser; when a symbol is employed whose normal and ordinary symbolism consists in supporting the delivery; when there is an express agreement on this point, or when knowing the value which the law gives to the execution of the instrument, such instrument is executed without any reservations or restrictions, it must be assumed that there was an intention to make delivery and that the thing was delivered. In brief, what is involved is the interpretation of an act which presupposes a specific state of the mind."

138

In *López* v. *Lizardi*, 27 P.R.R. 691, the court in properly limiting the scope and effect of the delivery by deed, expressed itself thus:

"We agree with the appellant that, according to Section 25 of the Law of Evidence, as the contract contained an express agreement regarding the delivery, it should be understood that it contains all of the conditions relative to it. But we do not agree with the absolute conclusions which the appellant draws from the provision of the Section of the Civil Code above cited. The execution of the deed creates the presumption *juris tantum* of the delivery. In the usual order of things a presumption is equivalent to a fact; but if in reality a contrary case should arise, the symbolic delivery recognized by Section 1365 of the Civil Code would not finally decide the question."

And here the evidence presented gives rise to the conviction that in fact the lot facing the highway was never delivered by the defendant to the plaintiff, nor did the latter take material possession of it or benefit from it in any way, for which reason we can not agree with the trial judge that, as to that lot, there was a truly consummated and perfected contract. As to the other parcel, the fact is in harmony with the presumption.

■ ■ But furthermore, not only did the defendant fail to deliver the lot in question to the plaintiff, but he was unable to deliver it to her since he had sold something which did not belong to him.

Manresa, in referring, in his *Comentarios,* to Section 1445 of the Spanish Civil Code, which is equivalent to Section 1334 of our Code, 1930 ed., to the sale of something belonging to another, says:

"Our Code says nothing in respect to something belonging to another. It is, of course, invalid because a sale represents a transfer of rights, and one can hardly transfer what he does not have. What happens is that such a sale may come to be effective by prescription, and this is because the vendor then transfers the right which he really has in the thing, which is that of possession without dominion title.

"On this basis, and that of the doctrine of eviction, which protects the purchaser of the property of another, several Codes and several text-writers admit the validity of the sale of property of another. But to our way of thinking, the warranty in case of eviction necessarily brings into relief the more or less concealed nullity of that kind of sale, by imposing on the vendor the obligation to pay damages. The law, which admits the right of possession as opposed to the right of the owner, and presumes good faith until the contrary is shown, accepts the possibility of the sale of property of another in the belief that it is one's own, and leaves the act to the consequences which may later result.

"Spanish cases have shown a somewhat indecisive judgment with regard to the problem of the sale of property of another. The thesis of its validity is affirmed incidentally by the decisions of the *Directorio de Registros* of December 6, 1898 and September 2, 1902, which hold that it is not essential to the contract of sale that the vendor be the owner of the thing sold, and also by the judgment of the Supreme Court of January 31, 1921. On the other hand, the judgment of June 26, 1924, to the effect that if the thing offered by the vendor belongs to another, then the real elements necessary for the perfection of the contract are lacking, and that of November 20, 1925, which holds that the mistake of assuming that the property of another belongs to the vendor, invalidates the consent, seem to incline toward a contrary solution." 10 Manresa, *Comentarios al Código Civil Español* p. 24.

And *Scaevola*, in volume 20 of his *Comentarios al Código Civil*, p. 687 and following, expresses himself, in part, as follows:

"The Romans distinguished between the act of another and the thing of another, and although they considered all stipulations as to the act of another null and void, because consent is subjective and must refer to the will itself, as also because otherwise the validity of such stipulations would involve the deprivation of the liberty of a third person without any action on his part, they conceded a certain validity to the sale of the thing of another, although always in contemplation of the fact that the latter could in turn consent to the object of the contract.

" * * * * * * *

"The Code of the *Partidas* gave detailed and even excessively prolix attention to the case before us: *Where a man sells to another*

*someth·ng which is not his, the sale is valid.* It repeats, as may be seen, the Roman rule; but either the purchaser knows that the thing does not belong to the vendor, or he believes that it does; in the former case, the purchase price cannot be recovered even though the owner recovers the thing sold; in the latter, the vendor must pay not only the price, but also all damages which may result from the said sale. (Partida 5, tit. V, law 19.)

"In the *Partidas* as well as in Roman law, by means of an ingenious mechanism we find the possibility of transferring, either onerous or gratuitously, the thing of another, and in the Spanish Code there is still legislation, reminiscent of those Codes, dealing with the legacy of the property of another to which Sections 861 and 875 bear ample witness; but if these transfers are analyzed, it will become very clear that between the sale and the legacy of one's own property and that of another, there is a veritable abyss separating them.

"Where, then, does perfection inhere in a mode of transfer which opens wide the door to the right of the owner by means of the vindicatory action? If the mode does not authorize the substitution of the owner, we say with open conviction that the *sale* of another's thing in its own and genuine sense as a mode of transfer, is essentially null and void and cannot be the lawful object of a contract of sale."

We cannot agree with the trial judge in that the action—in so far as it concerns the lot facing the highway—has prescribed. We have here a nonexistent contract, since it never had nor could have full reality, and therefore the rule contained in Section 1251 of the Civil Code, 1930 ed., is not applicable.

As far as lot no. 2 is concerned, even though we have entertained some doubt as to whether or not it should follow lot no. 1, inasmuch as the purpose of the purchase by the plaintiff was to build a residence, converting the two lots into one, in view of the nature of the action and the time when it was brought, we do not believe that judgment can be rendered resolving its sale, and as to the other claims, a judgment for the plaintiff cannot be rendered, for want of specific and convincing evidence.

For the foregoing reasons the judgment appealed from should be modified and a judgment rendered for the plaintiff on the complaint dissolving the contract for the sale of lot No. 1 and ordering the defendant to return the sum of $2,240, with legal interest, from June 9, 1928, the date on which said sum was paid, the rest of said contract remaining in full force and effect.

Mr. Justice Córdova Dávila and Mr. Justice Travieso took no part in the decision of this case.